

IN THE
TENTH COURT OF APPEALS

No. 10-09-00333-CR

O.C. CLINTON HAYWARD,
                                                              Appellant
 v.

THE STATE OF TEXAS,
                                                              Appellee

From the 85th District Court
Brazos County, Texas
Trial Court No. 08-05243-CRF-85

# MEMORANDUM  OPINION

O.C. Clinton Hayward was found guilty of murder and sentenced to 99 years in prison. *See* TEX. PENAL CODE ANN. § 19.02 (West 2003).  Because Hayward's complaint regarding evidence of Hayward's gang affiliation was not preserved, his request for an instruction to disregard was untimely, and the evidence was sufficient to support his conviction, the trial court's judgment is affirmed.

## BACKGROUND

It was the weekend Hurricane Ike blew in.  Wesley Miller, a man with a drug problem, cashed his paycheck and went to hang out with a friend.  Later that night,

Miller was dropped off across the street from the Villa West Apartments. Miller had a crack pipe with him. In the early morning hours, the Bryan Police and Fire Departments received a call about a stabbing. Miller was found outside one of the Villa West Apartment buildings lying face down on the ground with his arms outstretched above his head. He was pale in color, cold, had no pulse, and was not breathing. It appeared he had been dead a while. From the waist down, he was covered in blood. His jeans, boots, right sock, and underwear were saturated with blood. His right pocket was turned out, suggesting a robbery. Officers followed a bloody trail to apartment 1403, the apartment of Bennie Smith. After talking with Bennie and a person who lived next door to him, officers went looking for Hayward.

## GANG AFFILIATION

In his first issue, Hayward contends that the trial court erred in admitting evidence of Hayward's gang affiliation. He complains about a specific exchange during the guilt/innocence phase of the trial between the State and a defense witness, Fezzell Jones.

Q.    …. Do you belong to any clubs with Clinton Hayward?

A.    Not that I know of.

Q.    I noticed that you had a bandanna.

A.    Yeah.

Q.    What color is that?

A.    Blue.

Q.    You're from Los Angeles?

A.    By way of the bay area originally.  San Francisco, Oakland.

Q.    Are there neighborhoods where you're not welcome to wear blue?

A.    Yes.

Q.    What neighborhoods are those?

A.    Plenty of neighborhoods.

Q.    Where the bloods are?

A.    Exactly.

Q.    Are there neighborhoods where you can wear blue?

A.    Yes, there is.

Q.    That's the crypts (sic) neighborhood?

A.    That's right.

Q.    And when I'm speaking of blue, the blue of this T-shirt found in Clinton Hayward's backpack?

A.    Okay.

Q.    Is that about the color of your bandana?

A.    That's a little lighter than mine.

Q.    A little lighter.  Certainly not red?

At this point, Hayward's counsel asked to approach the bench where he stated that the State was going into something that was the subject of a motion in limine.  Counsel stated that he could understand asking the witness about what he was wearing, "but when he starts asking about my client, then I think this is the subject of the motion in limine."  The "objection" was overruled.

We review the admission of evidence under an abuse of discretion standard. *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007). A trial court abuses its discretion if its ruling is outside the zone of reasonable disagreement. *Id*. However, as a prerequisite to presenting a complaint on appeal, a party must have made a timely and specific request, objection, or motion to the trial court. TEX. R. APP. P. 33.1(a)(1)(A). An objection is timely if it is made as soon as the ground for the objection becomes apparent, *i.e.*, as soon as the defense knows or should know that an error has occurred. *Neal v. State*, 256 S.W.3d 264, 279 (Tex. Crim. App. 2008).

If the State was making an inference that Hayward was a member of a gang, Hayward should have become aware of it when the State compared the t-shirt in Hayward's backpack to Jones's bandana. The State had already established that the color blue was associated with the Crips gang. The State then stated, "speaking of blue" and compared the shades of blue of the t-shirt to the bandana. It was at that time that Hayward should have objected. By waiting until the State made the statement that the t-shirt was not red, the objection was too late.

Hayward's objection was untimely and his complaint is not preserved. TEX. R. APP. P. 33.1. His first issue is overruled.

### INSTRUCTION

In his second issue, Hayward complains that the trial court erred in refusing to give a "contemporaneous" instruction to disregard evidence of the co-defendant's conviction.

Hayward presented a theory to the jury through several witnesses' testimony that Bennie Smith had been tried and convicted of the murder of Miller, that Hayward's co-defendant, Bennie, was the true murderer. During the cross-examination of Detective Fry, Hayward established that Bennie had been convicted and sentenced to 60 years in prison. When the State then elicited testimony on re-direct that Bennie was convicted in conspiracy with Hayward, Hayward objected to the detective's statement as a legal theory. At a bench conference, the trial court reminded Hayward that he was the one who brought up that Bennie was convicted and sentenced. Hayward explained that his objection was based on the verdict form that allowed the jury to convict either directly or under the law of parties. The trial court stated that the jury was not charged in that manner. The objection was overruled.

After Fry testified and was excused, the jury took a lunch break and the trial court addressed matters that the parties wanted the court to address outside the presence of the jury. Before the parties then left for lunch, the trial court inquired as to whether there was "some strategic decision on the part of the defense to interject the results of the Bennie Smith trial into this case." Hayward replied that he believed "the true killer had been convicted." A lunch recess was taken. Then, before the jury was brought back into the court room, Hayward informed the court that over lunch he had thought about what the court had asked. Hayward made a motion to strike the testimony that had been elicited from Fry by both his counsel and the State and requested an instruction to the jury to disregard the testimony as to whether or not Bennie was convicted or any sentence that he may have received. After discussion by

both parties, the trial court denied the request, stating he did not want to try to "unring that bell," but also suggested that they talk about it again at the charge conference.

As stated in the previous issue, a prerequisite to presenting a complaint on appeal is that a party must have made a timely and specific request, objection, or motion to the trial court. TEX. R. APP. P. 33.1(a)(1)(A). Hayward's request was not made until after the witness was excused, the jury was excused for lunch, and the parties were excused for lunch. It was not until after lunch and before the jury was brought back into the courtroom that the request was made. Accordingly, Hayward's request was untimely and his complaint on appeal is not preserved. *Id.* His second issue is overruled.

### SUFFICIENCY OF THE EVIDENCE

In his third issue, Hayward asserts that the evidence was insufficient to support the verdict. Hayward essentially argues that the State failed to negate the issue of self defense because there was no evidence or no probative evidence that Hayward was the first aggressor.

The *Jackson v. Virginia* standard is the only standard that a reviewing court applies in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *see Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). A reviewing court should not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." *Blackman v. State*, No. PD-0109-10, 2011 Tex. Crim. App. LEXIS 497, *18 (quoting *Jackson*,

443 U.S. at 318-19) (emphasis in original). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original).

Regarding self-defense, the State bears a burden of persuasion, but not a burden of production. *Saxton v. State*, 804 S.W.2d 910, 913 (Tex. Crim. App. 1991). That is, the State need not produce evidence refuting the self-defense claim; it must only prove its case beyond a reasonable doubt. *Id*. In resolving the sufficiency of the evidence issue, we look not to whether the State presented evidence which refuted a defendant's self-defense testimony, but rather we still use the *Jackson* standard. *Id*. at 914.

Hayward was charged with conspiring with Bennie to rob Miller and in furtherance of the conspiracy, committed an act clearly dangerous to human life, cutting Miller, which caused Miller's death.

After spending time with a friend, Miller was dropped off Friday night at the Villa West Apartments where Miller was going to look for a prostitute. He also had a crack pipe with him. He eventually ended up in Bennie's apartment where Miller had been the primary supplier of crack that the group at the apartment smoked. Bennie and Miller argued about Miller's missing crack pipe. They also argued about Miller owing Bennie some money. Bennie then called Hayward over to the apartment. Hayward said he was in the mood for robbing and killing someone. He threatened to beat up and break the legs of Bennie's girlfriend, Charlotte. Initially, Bennie and Hayward talked at

the door for a while. Miller was still inside the apartment during Bennie's and Hayward's conversation.

Bennie, Miller, and Hayward later gathered in Bennie's bathroom where a fight broke out that lasted 15 to 20 minutes and that was so intense, it knocked the shower curtain and rod off the shower of the apartment next door. There were also signs of a struggle in the living area of the apartment. During the fight, Miller was stabbed in the front of the right thigh which cut the femoral artery and vein, and in the back of the right thigh underneath the right buttock. Although Hayward denied in his statement to police that he stabbed Miller at all, Hayward's mother testified that he indicated to her that he stabbed Miller in the buttock. Additionally, although there was testimony that only Bennie carried Miller out of the apartment, there was also testimony that Bennie and Hayward carried Miller out and left him at the side of the apartment building. Hayward told police several times that he ran from the scene after Bennie pulled Miller outside. But by the end of his statement, Hayward said he just left, and that he did not run.

Miller's missing crack pipe was recovered from Bennie's pocket when Bennie was arrested for Miller's death.

The State presented evidence that Miller had picked up and cashed his paycheck in the amount of $342.12 on Friday, September 12, 2008. By the time Miller's dead body was discovered early the next morning by the police, only a small amount of change was in his pocket. His wallet was in Bennie's bathroom. His paystub was found in the

wallet, but the remainder of the contents in the wallet had been emptied into the trash can along with two bathroom rugs that were saturated with blood.

Hayward told police that he had less than $40 on him. He said he had donated plasma and received $20 and pawned an air compressor for $20. Then he said he bought a pack of cigarettes. Fifteen dollars were located in the jeans Hayward wore that night along with Miller's cell phone. Forty-three additional dollars had been wadded up by Hayward and stuffed under his mother's dining room tablecloth.

Hayward bathed at his mother's apartment, changed clothes, and stuffed some of the clothes he had been wearing in a back pack. The item of clothing with the most blood on it, a muscle type undershirt, was thrown in the washer.

Hayward told his mother and a friend that he thought he was being robbed that night. However, he told the friend that a black man and a white woman tried to rob him. Miller was a white male. Hayward at first told police that he thought Miller was going to rob him when Miller pulled a razor-type knife on him in Bennie's bathroom after Hayward said he did not have any crack but was trying then to give Miller change for a twenty. They struggled after Miller cut or poked him in the arm and the thumb. Hayward then said Miller probably pulled the knife because Bennie was upset about not getting any crack and not having his money. Hayward also later questioned whether getting cut was his own fault because Miller had only raised the blade and Hayward had put up his hands to try to take it away. The cuts Hayward received were minor and were not the type that would drip blood.

Through various witnesses, Hayward also presented a theory to the jury that he could not have helped Bennie carry Miller out of the apartment because he had broken his hand 6 weeks earlier. The bone broken was the bone right below the knuckle of the right pinkie. That type of break was referred to as a "boxer's fracture." The medical examiner testified that the injury should have been healed by the time of Miller's death.

After reviewing the record under the appropriate standard, we find *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. The evidence is sufficient to support the jury's verdict, and Hayward's third issue is overruled.

## CONCLUSION

Having overruled each of Hayward's issues on appeal, we affirm the trial court's judgment.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
        Justice Davis, and
        Justice Scoggins
Affirmed
Opinion delivered and filed May 18, 2011
Do not publish
[CRPM]